**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **ARLANXEO USA, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | **Civil Action No.: 4:25-cv-01980** |
| | § | |
| **TURNER INDUSTRIES GROUP, LLC,** | § | |
| **and ACE AMERICAN INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| *Defendants*. | § | |

<u>**ARLANXEO USA LLC'S MOTION FOR SUMMARY JUDGMENT**</u>

Plaintiff Arlanxeo USA, LLC ("Arlanxeo") files this Motion for Summary Judgment (the "Motion") against Defendants Turner Industries Group, LLC ("Turner") and ACE American Insurance Company ("ACE") (together, "Defendants"). In support thereof, Arlanxeo respectfully shows the Court as follows:

**ARLANXEO'S MOTION FOR SUMMARY JUDGMENT**                                    **PAGE 1**

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................ 2

**TABLE OF AUTHORITIES (in alphabetical order)** ................................................. 3

**STATEMENT OF THE ISSUES AND APPLICABLE STANDARD OF REVIEW** ............. 4

**SUMMARY JUDGMENT EVIDENCE** ............................................................................ 5

**SUMMARY OF THE ARGUMENT** ............................................................................... 5

**UNDISPUTED FACTS** ................................................................................................. 6

    A.   Arlanxeo, Turner, and ACE ........................................................................... 6

    B.   The Underlying Lawsuit ................................................................................ 10

    C.   Turner and ACE's Refusal to Indemnify Arlanxeo ..................................... 11

**SUMMARY JUDGMENT STANDARD** ...................................................................... 12

**ARGUMENT AND AUTHORITIES** ............................................................................ 13

    A.   The Plain Language of the SIPA Agreement, the Policy, and the Allegations in the Arce Action Entitle Arlanxeo to the Declaratory Relief it Seeks. ..................................... 13

    B.   Defendants' Refusal to Defend and Indemnify Arlanxeo Breached the SIPA Agreement. 23

    C.   Defendants' Affirmative Defenses Have Not—and Cannot—be Proven ......................... 24

    D.   Arlanxeo is Entitled to Attorneys' Fees. ..................................................... 25

**CONCLUSION** .......................................................................................................... 25

## TABLE OF AUTHORITIES (in alphabetical order)

*Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 455 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ...16

*AIG Specialty Ins. Co. v. Ace Am. Ins. Co.*, No. 2:18-CV-16, 2019 WL 1243911, at *2 (S.D. Tex. Mar. 18, 2019)..17

*AIG Specialty Ins. Co.*, 2019 WL 1243911, at *8......................................................................................18

*American General Life Ins. Co. v. Kirsch*, 378 Fed. Appx. 379, 383 (5th Cir. 2010) ................................23

*Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014)............12

*Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007)....................................12

*Colony Ins. Co. v. Adsil, Inc.*, No. 4:16-CV-408, 2018 WL 2562555, at *7 (S.D. Tex. June 4, 2018) ........22

*D.E.W., Inc. v. Local 93, Laborers' Int'l Union*, 957 F.2d 196, 199 (5th Cir.1992)....................................23

*Dynergy Midstream Services, Limited Partnership v. Apache Corp*, 294 S.W.3d 164, 167 (Tex. 2009)....................13

*English v. BGP Intern. Inc.*, 174 S.W.3d 366, 372 (Tex. App.—Houston [14th Dist.] 2005, no pet.)........21

*Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 665 (Tex. 2008) ..........................16

*Gulf Inc. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000) .......................................................13

*Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000)..........................................................12

*Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014)........................13

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)...................................................................12

*McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 378 (5th Cir. 2013).........................5

*Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 229 (5th Cir. 2000)..............................16

*Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 612 (5th Cir. 2012).......................................................5

*Nat'l Cas. Co.*, 669 F.3d at 612 ...................................................................................................................16

*Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006) ...........................................................................13

*Wesley v. Gen. Drivers, Warehousemen & Helpers Loc., 745*, 660 F.3d 211, 213 (5th Cir. 2011) (quoting *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)) ...........................................................24

*Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).......................................................16

**STATEMENT OF NATURE AND STAGE OF PROCEEDING**

This is an action for declaratory relief regarding Defendants' indemnity obligations in light of third-party claims asserted against Arlanxeo. This case was filed on May 1, 2025 with the initial scheduling conference set for August 1, 2025. The material facts are undisputed. The only issues before the Court are (i) the scope of Turner's contractual duty to defend and indemnify Arlanxeo for a personal injury claim asserted against Arlanxeo by one of Turner's employees; and (ii) ACE's resulting contractual duty to provide insurance coverage to Arlanxeo as an "additional insured" under a liability insurance policy ACE issued to Turner. Because the dispute presents purely legal questions and does not require evidence beyond the parties' agreements and the pleadings in the underlying action, Arlanxeo respectfully moves the Court for summary judgment.

**STATEMENT OF THE ISSUES AND APPLICABLE STANDARD OF REVIEW**

1.  Whether the indemnity provision in the Scaffolding, Insulation, Painting and Abatement (SIPA) Services Agreement ("SIPA Agreement") between Arlanxeo and Turner applies to third-party claims arising from the indemnitor's (Turner's) own negligence.

2.  Whether a third-party's claims against Arlanxeo, based on Turner's negligence or fault, invoke Turner's indemnification obligations under the SIPA Agreement and ACE's coverage obligations under the general commercial liability policy # HDO G72484010 (the "Policy") Turner had in place at the time the third-party was allegedly injured.

3.  Whether Defendants have breached their contractual indemnity/coverage obligations to Arlanxeo by refusing to acknowledge their obligations and failing to supply a defense to Arlanxeo in the third-party action against Arlanxeo.

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Where the

**ARLANXEO'S MOTION FOR SUMMARY JUDGMENT**                                    **PAGE 4**

dispute turns solely on the interpretation of an unambiguous contract, the issue is a question of law for the Court to decide. *McLane Foodservice, Inc. v. Table Rock Rests., L.L.C.*, 736 F.3d 375, 378 (5th Cir. 2013). "The scope of an insurer's duty to defend against a lawsuit is determined exclusively by the allegations in the pleadings and the language of the insurance policy." *Nat'l Cas. Co. v. W. World Ins. Co.*, 669 F.3d 608, 612 (5th Cir. 2012).

### SUMMARY JUDGMENT EVIDENCE

| | |
|---|---|
| Exhibit A | Declaration of Vicki Brown, Arlanxeo Employee |
| Exhibit B | SIPA Agreement |
| Exhibit C | ACE Policy |
| Exhibit D | Arce Action Original Petition |
| Exhibit E | Arce Action First Amended Complaint |
| Exhibit F | Arlanxeo's October 3, 2023 Tender to Turner |
| Exhibit G | Turner's October 30, 2023 Rejection of Arlanxeo's Tender |
| Exhibit H | ACE's November 7, 2023 Rejection of Arlanxeo's Tender |
| Exhibit I | Arlanxeo's January 9, 2024 Amended Tender to Turner |
| Exhibit J | Turner's February 3, 2025 Rejection of Arlanxeo's Tender |

### SUMMARY OF THE ARGUMENT

Through this Motion, Arlanxeo seeks (i) declaratory relief establishing the scope of Defendants' indemnity/coverage obligations under the parties' written agreements and application of those obligations to the third-party's claims against Arlanxeo; and, in the alternative, (ii) a finding that Defendants breached their indemnification/coverage obligations to Arlanxeo by their refusal to defend Arlanxeo in the third-party's lawsuit.

In the SIPA Agreement, Arlanxeo and Turner contractually delegated to Turner all responsibility to supervise Turner's employees and to ensure safe working conditions during a project Turner was conducting at an Arlanxeo facility. The contract also obligates Turner to defend and indemnify Arlanxeo against any claims arising out of Turner's own negligence or fault. As part of this obligation, Turner agreed in the SIPA Agreement to include Arlanxeo as an additional insured on Turner's general commercial liability policy issued by ACE.

In November 2022, while working under Turner's supervision during an insulation project at an Arlanxeo facility in Orange, Texas, one of Turner's employees was injured. After collecting worker's compensation from Turner, the employee then filed a lawsuit against Arlanxeo, alleging negligence and premises liability claims. Despite Turner's absence as a defendant in the lawsuit (which was clearly a strategic decision by the claimant to avoid the worker's compensation bar), the factual allegations in the lawsuit identify Turner's negligent conduct as a cause of the employee's alleged damages. Such allegations triggered Turner's and ACE's duty to defend and indemnify Arlanxeo under the SIPA Agreement and the Policy, but Defendants refused to honor their obligations. As a result, Arlanxeo has incurred damages in the costs of defending itself in the litigation and is positioned to incur additional damages pending the case's resolution. Based on the plain language of the parties' agreements and the factual allegations in the underlying lawsuit, Arlanxeo is entitled to summary judgment on its claims against Turner and ACE.

## UNDISPUTED FACTS

### A. Arlanxeo, Turner, and ACE

Arlanxeo is a global producer of synthetic, high-performance rubber and elastomers used in various industries.[1] Turner is a contractor that provides industrial services, including shutdown and turnaround services to companies that produce fuel, energy, and other materials.[2]

On January 23, 2017, Arlanxeo and Turner executed the SIPA Agreement.[3] In accordance, Turner was to provide SIPA services at Arlanxeo's plant in Orange, Texas (the "Plant").[4] Arlanxeo frequently used Turner to perform SIPA work at the Plant.[5]

---

[1] Ex. A at ¶ 2.
[2] *Id.* at ¶ 3.
[3] Ex. B at 1. The introductory paragraph of the SIPA Agreement defines "Owner" as Arlanxeo and "Contractor" as Turner.
[4] *Id.*
[5] Ex. A ¶ 4.

**ARLANXEO'S MOTION FOR SUMMARY JUDGMENT**                                      **PAGE 6**

Under the SIPA Agreement, Turner agreed to be responsible for the safety of its employees while performing SIPA work at the Plant:

> 13.1 While performing WORK on OWNER's premises, CONTRACTOR and its officers, directors, agents, employees, representatives, supervisors, employees, or SUBCONTRACTORS shall comply with OWNER health and safety policies, site rules, safety training and requirements, including but not limited to the policies and procedures attached hereto as Attachment 4. CONTRACTOR represents and warrants its officers, directors, agents, employees, representatives, supervisors, successors, assigns, employees, or SUBCONTRACTORS have completed the health and safety training specified in Attachment 4. CONTRACTOR shall be responsible and liable for the health and safety of its officers, directors, agents, employees, representatives, supervisors, successors, assigns, employees, or SUBCONTRACTORS while carrying out the WORK specified in the CONTRACT DOCUMENTS, including the required standard personal protective equipment. CONTRACTOR is responsible for instituting and maintaining proper safety precautions at all times and in all places that the WORK is being performed on OWNER's premises, whether by CONTRACTOR or by any of its SUBCONTRACTORS, agents or employees. CONTRACTOR warrants that CONTRACTOR and its SUBCONTRACTORS, agents and employees shall comply with all applicable federal, state and local health, safety and environmental rules, regulations and guidelines, including, but not limited to, OSHA regulation 29 CFR 1910 and 1926, where applicable, and with the safety regulations and precautions of OWNER while working on OWNER's premises.[6]

Moreover, the SIPA Agreement expressly delegated supervision of safe work to Turner: "CONTRACTOR is **solely** responsible for supervision of the WORK and shall not subcontract any of its responsibility for supervision of any portion of the WORK."[7]

Turner further agreed to assume responsibility for inspecting the Plant, for site conditions reasonably observed during inspection and to release Arlanxeo from responsibility for improving or maintaining the Plant:

> 10.1 CONTRACTOR shall inspect the visual above ground site and

---

[6] Ex B § 13.1.
[7] *Id*. § 16.3 (emphasis added).

**ARLANXEO'S MOTION FOR SUMMARY JUDGMENT**                    **PAGE 7**

be familiar with any obstacles or unusual conditions at the site prior to signing the CONTRACT DOCUMENTS . . . Because CONTRACTOR is given ample opportunity to inspect the site, including, but not limited to, access to relevant data by OWNER before agreeing to perform the WORK, CONTRACTOR waives all CLAIMS arising from site conditions that could have reasonably been observed and/or known and accepts all responsibility for any such site conditions.[8]

10.2 . . . CONTRACTOR waives all CLAIMS arising from site conditions which were heretofore discovered or which could have been discovered upon reasonable inspection . . . CONTRACTOR accepts the site in its existing condition and agrees that OWNER shall not be responsible for improving or maintaining the site in any way during the performance of the WORK beyond its current condition.[9]

The SIPA Agreement required Turner to indemnify, defend, and hold harmless Arlanxeo from all claims and causes of action caused or alleged to be caused by the negligent acts or omissions of Turner, arising from or related to Turner's negligent performance of its obligations—including claims of personal injuries sustained by Turner's employees:

25.0 Indemnity. CONTRACTOR SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS OWNER, ITS PREDECESSORS, SUCCESSORS, PARENT, AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, REPRESENTATIVES AND ASSIGNS, FROM AND AGAINST ANY AND ALL CLAIMS, DEFINED IN THIS ARTICLE AS CLAIMS, LIABILITY, CAUSES OF ACTION, CONTRIBUTION, INDEMNITY, SUITS, DAMAGES, LOSS, COSTS, FINES AND EXPENSES, INCLUDING BUT NOT LIMITED TO REASONABLE ATTORNEY'S FEES AND LITIGATION COSTS, TO THE EXTENT SUCH CLAIMS ARE CAUSED BY OR ALLEGED TO HAVE BEEN CAUSED BY THE NEGLIGENT ACTS OR OMISSIONS OF CONTRACTOR OR ANY OF ITS OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, REPRESENTATIVES, SUPERVISORS, SUCCESSORS, ASSIGNS, EMPLOYEES, SUBCONTRACTORS, OR ANYONE ACTING ON ANY OF THEIR BEHALF, ARISING FROM, OR RELATED TO CONTRACTOR'S NEGLIGENT PERFORMANCE OF ITS OBLIGATIONS UNDER THIS

_____

[8] _Id_. § 10.1.
[9] _Id_. § 10.2.

**ARLANXEO'S MOTION FOR SUMMARY JUDGMENT**                                    **PAGE 8**

AGREEMENT INCLUDING CLAIMS CONNECTED WITH OR RESULTING FROM INJURY TO OR DEATH OF PERSONS AND INJURY TO PROPERTY. SUCH ACTS AND OMISSIONS MAY INCLUDE, BUT ARE NOT LIMITED TO, NEGLIGENCE, STRICT LIABILITY, BREACH OF CONTRACT OR WARRANTY, OR STATUTORY VIOLATION. THE CONTRACTOR SHALL ENDEAVOR TO AMICABLY SETTLE ALL CLAIMS ASSERTED BY ANY OTHER PERSON OR ENTITY ARISING FROM SUCH ACTS OR OMISSIONS. SUBJECT TO AND LIMITED BY THE FOREGOING, CONTRACTOR FURTHER AGREES TO DEFEND, AT ITS OWN EXPENSE, AND ON BEHALF OWNER AND IN THE NAME OF OWNER ANY CLAIM OR LITIGATION BROUGHT IN CONNECTION WITH ANY SUCH INJURY, DEATH, OR DAMAGE.

***

IN THE EVENT ANY DAMAGES ARE CAUSED IN PART BY THE NEGLIGENCE OR FAULT OF CONTRACTOR AND IN PART BY ANY OTHER PARTY OR PARTIES (INCLUDING OWNER), CONTRACTOR AGREES THAT THIS INDEMNITY PROVISION APPLIES AND THAT CONTRACTOR WILL INDEMNIFY OWNER AND ITS PREDECESSORS, SUCCESSORS, PARENT, AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, REPRESENTATIVES AND ASSIGNS, TO THE EXTENT OF CONTRACTOR'S OR ANY OF ITS OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, REPRESENTATIVES, SUPERVISORS, SUCCESSORS, ASSIGNS, EMPLOYEES, SUBCONTRACTORS, OR ANYONE ACTING ON ANY OF THEIR BEHALF, NEGLIGENCE OR FAULT.

THIS INDEMNITY PROVISION IS SPECIFICALLY INTENDED TO INCLUDE, BUT IS NOT LIMITED TO, ANY CLAIMS FOR, ON ACCOUNT OF, OR ARISING FROM PERSONAL INJURIES OR DEATH ACTUALLY OR ALLEGEDLY SUSTAINED BY EMPLOYEES OF THE CONTRACTOR OR ITS SUBCONTRACTORS OR OTHER ENTITIES OR PERSONS ACTING ON CONTRACTOR'S BEHALF.[10]

The SIPA Agreement also required Turner to obtain insurance sufficient to fund its indemnity, liability, and other contractual obligations and to name Arlanxeo as an "additional insured" in Turner's insurance policy(ies):

---

[10] *Id*. § 25.

**ARLANXEO'S MOTION FOR SUMMARY JUDGMENT**                                    **PAGE 9**

> 24.1 The CONTRACTOR, at its own expense, shall at all pertinent times during the term of this AGREEMENT and thereafter possess sufficient insurance coverage to fund its indemnity, liability and other obligations arising from or related to this AGREEMENT.
>
> ***
>
> To the extent of CONTRACTOR's indemnification obligations expressly assumed under this AGREEMENT, OWNER, including its officers, directors, employees, representatives, and agents, shall be named as additional insureds and loss payees . . . .[11]

In accordance with its obligation under the SIPA Agreement, on March 18, 2022, Turner procured the Policy from ACE for the period from March 1, 2022 to March 1, 2023.[12]

Endorsement 35 of the ACE Policy includes Arlanxeo as an additional insured:

> Any Owner, Lessee or Contractor with whom you have agreed to include as an additional insured under a written contract or purchase order . . . but only to the extent of the Named Insured's obligation to defend or indemnify pursuant to a written contract that was executed prior to the date of loss.[13]

## B. The Underlying Lawsuit

On September 26, 2023, Ismael Arce ("Arce") filed his Original Petition against Arlanxeo in the 163rd Judicial District Court of Orange County, Texas arising from injuries allegedly sustained on November 3, 2022 while working as an insulator for Turner's at the Plant (the "Arce Action").[14] The action was later removed to the United States District Court for the Eastern District of Texas, wherein Arce filed his First Amended Complaint ("Complaint"), generally maintaining the same allegations as those in his Original Petition.[15] Arce alleges that he was harnessed and installing pipe-covering insulation blocks when an impulse line on a pressure switch broke, spraying him with hot water and steam.[16] Arce attributes his injuries to the fact that he was "tied

---

[11] *Id*. §§ 24.1, 24.2.

[12] Ex. C. ACE is the commercial general liability insurer for Turner. Chubb Group Holdings Inc. and/or one of its affiliates is now responsible for handling claims previously handled by ACE North American Claims. *See* Ex. H.

[13] Ex. C at Endt. 35.

[14] Ex. D.

[15] Ex. E.

[16] *Id*. ¶¶ 6-7.

up and stuck in the harness several feet off the ground" forcing him to be "continually sprayed with steam and hot water."[17] Based on Arce's alleged injuries, he brings claims against Arlanxeo for negligence and premises liability.[18]

While Arce did not name Turner as a defendant in the Arce Action, he did receive worker's compensation related to his alleged injury.[19]

### C. Turner and ACE's Refusal to Indemnify Arlanxeo

On October 3, 2023, Arlanxeo provided notice, tender, and demand for coverage of the Arce Action to Turner, requesting Turner place ACE on notice of the same.[20] On October 30, 2023, Turner rejected Arlanxeo's tender, asserting that (i) Turner is not a defendant in the litigation and (ii) the allegations in the Arce Action pertained to Arlanxeo's own negligence.[21] ACE likewise rejected Arlanxeo's tender, stating that the applicable additional insured endorsement in the Policy did not require ACE to defend or indemnify any person or organization unless and until Turner accepted its defense and indemnity obligation.[22]

On January 9, 2025, Arlanxeo again served Turner with a detailed Amended Tender, which referenced deposition transcripts and Turner's own investigative reports produced in discovery in the Arce Action, cited applicable case law, and analyzed the issues.[23] Arlanxeo directly addressed Turner's prior basis for denial by noting that Turner's duty to defend Arlanxeo is triggered when its negligence or fault is implicated by the pleadings—even if Turner is not directly named as a party.[24] Arlanxeo explained that Arce was hired, trained, and supervised by Turner and Turner

---

[17] *Id.*
[18] *Id.* §§ IV, V.
[19] *See* Ex. I at 1; Ex. J at 2.
[20] Ex. F.
[21] Ex. G at 3.
[22] Ex. H at 3.
[23] Ex. I.
[24] *Id.* at 1.

**ARLANXEO'S MOTION FOR SUMMARY JUDGMENT**                                    **PAGE 11**

(not Arlanxeo) required Arce to wear the full body harness that restricted Arce's escape from the hot water and steam, allegedly contributing to the magnitude of his injuries.[25]

In response, Turner admitted it did have a duty under the SIPA Agreement to indemnify Arlanxeo for any concurrent negligence of Turner, denied any concurrent fault.[26] Thus, Turner rejected the Amended Tender on the same basis—Turner's contention that it has no obligation to defend Arlanxeo because Turner was not named in the Arce Action.[27]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where, viewing the evidence in the light most favorable to the non-moving party, the pleadings and record show no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).  A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007).  A fact "is 'material' if its resolution could affect the outcome of the action." *Id.*

If the movant meets its burden to prove no genuine issue of material fact exists, the burden shifts to the non-movant to "show with significant probative evidence that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (internal quotation marks omitted). "[M]etaphysical doubt as to material facts," "conclusory allegations," "unsubstantiated assertions," or a mere "scintilla of evidence" will not do. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant fails to show evidence sufficient to establish the existence of an essential element of its case. *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014).

---

[25] *Id*. at 2.
[26] Ex. J at 1-2.
[27] *Id*.

## ARGUMENT AND AUTHORITIES

**A.  The Plain Language of the SIPA Agreement, the Policy, and the Allegations in the Arce Action Entitle Arlanxeo to the Declaratory Relief it Seeks.**

Indemnity agreements are construed under the normal rules of contract construction. *Gulf Inc. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000). The court's primary concern is to ascertain the true intentions of the parties as expressed in the contract. *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014). When unambiguous, Courts construe contracts as written, harmonizing the various sections, and ensuring that no section is rendered meaningless or surplusage. *See Tittle v. Enron Corp.*, 463 F.3d 410, 419 (5th Cir. 2006). Furthermore, the construction of an unambiguous contract is one for the Court to make as a matter of law and is properly made at the summary judgment stage. *See Dynergy Midstream Services, Limited Partnership v. Apache Corp*, 294 S.W.3d 164, 167 (Tex. 2009).

In accordance with the plain terms of the SIPA Agreement and Policy, Arlanxeo requests the following declarations:

- Under the SIPA Agreement, Turner agreed to assume liability for supervision of its employees, responsibility for their safety and health, and sole responsibility for inspecting the work site and ensuring the work was done in a safe manner;

- The SIPA Agreement obligates Turner to indemnify, defend, and hold harmless Arlanxeo for damages caused in part or in full by the negligence or fault of Turner;

- Arlanxeo is an additional insured under the Policy and the coverage is primary with respect to any and all other insurance;

- ACE is obligated under the Policy to indemnify, defend, and hold harmless Arlanxeo for damages caused in part by the negligence or fault of Turner, as provided in the SIPA Agreement;

- Arlanxeo timely tendered its defense in the Arce Action to Turner in accordance with the SIPA Agreement;

- Turner is specifically obligated under the SIPA Agreement to indemnify, defend, and hold harmless Arlanxeo for the defense costs incurred and to be incurred by Arlanxeo in the Arce Action, in addition to any settlement amount or judgment Arce may obtain against Arlanxeo; and

- ACE is specifically obligated under the Policy to indemnify, defend, and hold harmless Arlanxeo for the defense costs incurred and to be incurred by Arlanxeo in the Arce Action, in addition to any settlement amount or judgment Arce may obtain against Arlanxeo.

1. ***Turner and ACE are obligated under both the SIPA Agreement and the Policy to defend and indemnify Arlanxeo against any claims arising out of Turner's negligence or fault in carrying out its contractual duties.***

Well in advance of the incident alleged in the Arce Action, Arlanxeo and Turner entered into the SIPA Agreement, which expressly placed within Turner's sole control and responsibility (i) inspection of the Plant and site conditions; (ii) the health and safety of Turner's employees while carrying out the SIPA work; and (iii) indemnification of Arlanxeo regarding any claims arising out of Turner's negligence or fault.

More specifically, Turner agreed to inspect the Plant and familiarize itself with its condition, waiving "all claims arising from the site conditions which were heretofore discovered or which could have been discovered upon reasonable inspection."[28] Turner accepted the Plant site in its existing condition and agreed that "**[Arlanxeo] shall not be responsible for improving or maintaining the site in any way during the performance of the [SIPA work].**"[29]

Turner also agreed to "be responsible and liable for the health and safety" of its employees while carrying out the SIPA work, along with "instituting and maintaining proper safety precautions **at all times and in all places that the [SIPA work] is being performed on [Arlanxeo's] premises**."[30] Various additional sections of the SIPA Agreement reiterate Turner's

---

[28] Ex. B § 10.2.
[29] *Id*. (emphasis added).
[30] *Id*. § 13.1 (emphasis added).

**ARLANXEO'S MOTION FOR SUMMARY JUDGMENT**                                                    **PAGE 14**

control over and responsibility for work site safety.[31]

Finally, the parties agreed to allocate the costs and liability of any injured Turner employee according to which party caused the damages, whether by negligence or fault. The SIPA Agreement stated, "[Turner] shall indemnify, defend and hold harmless [Arlanxeo] . . . **from and against any and all claims . . . to the extent such claims are caused by or alleged to have been caused by the negligent acts or omissions of [Turner].**"[32]

Read together, the SIPA Agreement placed complete control of the SIPA work and site conditions with Turner—including site inspection, safety, training, and supervision of its employees. Because employee safety was expressly within Turner's purview, Turner agreed to defend and indemnify Arlanxeo against any claims caused by Turner's negligent acts or omissions, to the extent of Turner's negligence or fault.

The Policy agrees to acknowledge and honor Turner's obligations under the SIPA Agreement to name Arlanxeo as an additional insured. Specifically, the ACE Policy states in an "ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION" Endorsement that any owner Turner contracted to indemnify and name as an additional insured in Turner's liability insurance would in fact be an additional insured to the extent of Turner's indemnity obligations contained in the contract.[33] Thus, as a matter of unambiguous contract, both Turner and ACE are required to defend and indemnify Arlanxeo against any claims by Arce arising in whole or in part from Turner's negligence or fault.

---

[31] *See e.g.*, *id*. §§ 12.3 (obligating Turner to employ a project team that is capable of administering safety measures); 12.4 (identifying any failure by Turner to perform the safety requirements as a material breach); Attachment 4 at p. 43 (stating "[Turner] shall conduct routine safety meetings with all personnel . . . and job safety analysis [] must be held prior to the start of each shift/job as appropriate to ensure the safety of work activities."); Attachment 4 at p. 44 (stating "[Turner] will provide a Safety Representative to provide focus on safety improvement and training[.]").

[32] Ex. A § 25 (emphasis added) ("[I]n the event any damages are caused in part by the negligence or fault of [Turner] and in part by any other party or parties (including [Arlanxeo]), [Turner] agrees that this indemnity provision applies and that Turner will indemnify Arlanxeo[.]").

[33] *See* Ex. C at Endt. 35.

**2. *Arce's failure to name Turner as a defendant does not determine Arlanxeo's indemnification rights under the SIPA Agreement and Policy.***

"According to the eight corners rule, the scope of an insurer's duty to defend is determined exclusively by the allegations in the pleadings and the language of the insurance policy." *Nat'l Cas. Co.*, 669 F.3d at 612. Where the complaint does not state facts sufficiently clearly to make a coverage determination, "the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Id.* at 612. Essentially, "[i]f a complaint potentially includes a covered claim, the insurer must defend the entire suit." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).

An additional insured's indemnity coverage does not hinge on the identity of the defendant actually named in the underlying action. Where the insured party expressly agrees to defend and indemnify an additional party for claims caused by or arising out of the insured's negligence, the duty to defend is triggered when there is a nexus between the underlying claimant's allegations and the insured's control or conduct. *See e.g., Mid-Continent Cas. Co. v. Chevron Pipe Line Co.*, 205 F.3d 222, 229 (5th Cir. 2000) (invoking additional insured coverage when a contractor's injured employee sued the property owner for injuries occurring while working under the contractor's control); *Admiral Ins. Co. v. Trident NGL, Inc.*, 988 S.W.2d 451, 455 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ("We hold that because the accident in this case occurred to [the contractor's] employee while the employee was on the premises for the purpose of performing preventive maintenance on the compressor that exploded, the alleged liability for the employee's injuries "arose out of [the contractor's] operations," and, therefore, was covered by the "additional insured" provision."); *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 665 (Tex. 2008) (finding that the property owner was entitled to coverage where the contractor's employee was injured while performing maintenance work that the contractor had contractual

control and responsibility over). Thus, where the underlying action alleges damages resulting from acts or omissions in the control of the named insured, an insurer is obligated to defend and indemnify the additional insured.

This is especially true where the injured plaintiff has strategically chosen not to name his own, at-fault employer and, instead, only named the property owner in his suit—as Turner and ACE know well from their involvement in the remarkably similar case styled *AIG Specialty Ins. Co. v. Ace Am. Ins. Co.*, No. 2:18-CV-16. 2019 WL 1243911, at *2 (S.D. Tex. Mar. 18, 2019). In that case, Turner was contracted by Sherwin Alumina, LLC ("Sherwin") to perform maintenance at Sherwin's facility. *Id.* at *2. There, as here, Turner contractually agreed to indemnify Sherwin for claims arising out of Turner's own fault or negligence and, in support of this obligation, named Sherwin as additional insured under its insurance policy with ACE. *Id*. While working on a platform at Sherwin's facility, one of Turner's employees became injured and collected worker's compensation from Turner. *Id*. Because this recovery precluded the employee from making any additional claims against Turner, the employee sued Sherwin for negligence and premises liability, among other claims. *Id*. ACE argued there (as it has here) that Sherwin was not entitled to indemnity under the policy because Turner was not a named defendant in the employee's suit. *Id*. at *8. After analyzing the additional insured endorsement of the ACE insurance policy (which contains the same operable language as the additional insured endorsement in the Policy— *compare id.* at *6 *with* Ex. C at Endt. 35), the court rejected this argument, holding that the employee's failure to name Turner as a defendant was clearly a function of the worker's compensation bar, *not* because Turner was free from liability for its own negligence or fault. *Id.* at *8.[34] Because the provisions of Sherwin and Turner's agreement identified Turner's liability to

---

[34] If ACE were to argue (as it did in *AIG Specialty Ins. Co.*) that it has no obligation to indemnify Arlanxeo based on the "predetermination" language included in Endorsement 35 of the Policy, this argument would also fail as a matter

Sherwin for allegations of negligence and failure to provide a safe workplace, the court held that Sherwin was entitled to seek damages from Turner for its failure to indemnify Sherwin. *Id*. at *9.

Arce only brings the underlying suit against Arlanxeo because—identical to Turner's employee in *AIG Specialty Ins. Co.*—Arce already recovered worker's compensation from Turner and is thus barred from suing Turner. Although Arce, like the *Sherwin* plaintiff, attempts to frame his allegations only against Arlanxeo, Turner is not free from its obligations in the SIPA Agreement. Moreover, neither the SIPA Agreement nor the Policy limit Turner's indemnity obligations to only third-party lawsuits brought against Turner. Thus, Turner's and ACE's obligations to defend and indemnify Arlanxeo should be determined under the "eight corners rule" by comparing the Arce Action allegations to Turner's obligations under the SIPA Agreement.

### 3. *Turner's negligent acts or omissions—not Arlanxeo's—underpin Arce's allegations.*

When comparing the factual allegations in the Arce Action to the language of the SIPA Agreement, it is indisputable that the conduct complained of and/or contributing to Arce's alleged damages belonged, at least in part, to Turner, despite Turner's absence as a defendant from the Arce Action and Arce's attempt to ascribe to Arlanxeo responsibilities Turner and Arlanxeo had undisputedly agreed in their contract would solely be Turner's:

| **Arce Action Allegation** | **Contractual Responsibility**[35] |
|---|---|
| "On November 3, 2022, Plaintiff was working as an insulator at the Arlanxeo plant located in Orange, Texas. Plaintiff was employed by Turner Industries at the time of the | Attachment 1 of the SIPA Agreement describes the work Turner is responsible for to include insulation services, including all equipment and manpower required. Ex. B at Att. 1.<br><br>"Turner is solely responsible for supervision of the [SIPA |

---

of law. Endorsement 35 states, in part: "[ACE], however, shall have no obligation to defend or indemnify any such person or organization unless and until [Turner's] obligation to defend and indemnify is accepted by [Turner] and agreed to by [ACE] or determined by judgment." Ex. C at Endt. 35. The *AIG Specialty Ins. Co.* court rejected a literal reading of this language—that additional insured status is conferred to the property owner *only if* Turner chooses to indemnify or until the property owner obtains a judgment against Turner—and ruled that such an application would render the policy endorsement meaningless and illusory. *AIG Specialty Ins. Co.*, No. 2:18-CV-16, 2019 WL 1243911, at *6. That would be the case here as well.

[35] For efficiency and simplicity in this chart, the SIPA Agreement terms "Owner" and "Contractor" have been replaced here with "Arlanxeo" and "Turner," respectively.

**ARLANXEO'S MOTION FOR SUMMARY JUDGMENT**                                              **PAGE 18**

| | |
|---|---|
| incident. Turner Industries has been contracted by Defendant." Ex. E ¶ 5. | work] and shall not subcontract any of its responsibility for supervision[.]" *Id*. § 16.3.<br>"Turner is responsible for instituting and maintaining proper safety precautions at all time and in all places that the [SIPA work] is being performed on Arlanxeo's premises[.]" *Id*. § 13.1. |
| "Plaintiff had been installing pipe-covering insulation blocks on 12-inch boiler feed water piping and was measuring to install aluminum metal jacketing in accordance with Turner's contract with Defendant, at approximately 3:30 pm. on November 3, 2022, a small-diameter (3/8 inch) impulse line on a pressure switch broke, spraying hot water/steam on Plaintiff." *Id*. ¶ 6. | "Turner shall be responsible and liable for the health and safety of its … employees …while carrying out the [SIPA work] specified in the [SIPA Agreement] including the required standard personal protective equipment." *Id*. § 13.1.<br>"Turner is solely responsible for supervision of the [SIPA work] and shall not subcontract any of its responsibility for supervision of any portion of the [SIPA work]." *Id*. § 16.3. |
| "Plaintiff was harnessed and insulating pipe when the impulse line broke. Since Plaintiff was tied up and stuck in the harness several feet off the ground, he was continually sprayed with steam and hot water. As a result of the hot water/steam that was sprayed on Plaintiff, he has suffered severe burns to a majority of the bottom half of his body and required surgery on his shoulder." *Id*. ¶ 7. | "Turner shall be responsible and liable for the health and safety of its … employees …while carrying out the [SIPA work] specified in the [SIPA Agreement] including the required standard personal protective equipment." *Id*. § 13.1.<br>"Turner warrants that … its … employees shall comply with … OSHA regulation 29 CFR 1910 and 1926, where applicable, and with the safety precaution of Arlanxeo while working on Arlanxeo's premises." *Id*. § 13.1. Note that the referenced OSHA regulations govern appropriate harnessing, a contractual responsibility of Turner's. |
| "The impulse line was not a part of the insulating work Defendant contracted Turner to perform,[36] and no action by Plaintiff caused the impulse line to break. Plaintiff did not touch, bump, or otherwise contact the impulse line or the pressure switch to which it was attached." *Id*. ¶ 8. | Attachment 1 of the SIPA Agreement describes the work Turner is responsible for to include **insulation** services, including all equipment and manpower required, and **other services as requested by Arlanxeo**. *See Id*. at Att. 1 (emphasis added). |
| "The impulse line was part of the original equipment installed in the plant in the 1960s, and it had not been repaired or replaced in more than half a century. Defendant knew or should have known that | "Turner shall inspect the visual above ground site and be familiar with any obstacles or unusual conditions at the site prior to signing the CONTRACT DOCUMENTS … Because Turner is given ample opportunity to inspect the site, including, but not limited to, access to relevant data by Arlanxeo before agreeing to perform the WORK, Turner |

[36] This allegation alone expressly places Turner's negligence at issue.

**ARLANXEO'S MOTION FOR SUMMARY JUDGMENT**                    **PAGE 19**

| | |
|---|---|
| normal operation of the plant would result in thinning and deterioration of the impulse line, making it subject to breakage if bumped or from the pressurized liquid in the pipes." *Id*. ¶ 9. | waives all CLAIMS arising from site conditions that could have reasonably been observed and/or known and accepts all responsibility for any such site conditions." *Id*. § 10.1. "Turner accepts the site in its existing condition and agrees that Arlanxeo shall not be responsible for improving or maintaining the site in any way during the performance of the [SIPA work] beyond its current condition." *Id*. § 10.2. |
| "Defendant's 'Safe Work Practices' required lock out and tag out procedures 'for equipment that is capable of storing hazardous energy, including but not limited to: electrical, chemical, mechanical, hydraulic, pneumatic, and thermal energy,' to ensure: Personnel, equipment, and the environment are protected against the unexpected release of energy by isolating those energy sources that may release energy and cause harm during the course of service or repair of equipment." *Id*. ¶ 10. | "Each day before starting work in an operating area, the Turner representative shall make appropriate notifications of any planned activity and obtain necessary permits to perform the work." *Id*. at Att. 4. "Turner shall work with Arlanxeo designated SIPA coordinator to ensure proper quality, scaffolding volume, insulation specifications, painting specifications, color, schedule requirements and safety requirements are met." *Id*. at Att. 1 "Turner is responsible for instituting and maintaining proper safety precautions at all time and in all places that the [SIPA work] is being performed on Arlanxeo's premises[.]" *Id*. § 13.1. "Turner shall be responsible and liable for the health and safety of its … employees …while carrying out the [SIPA work] … including the required standard personal protective equipment." *Id*. § 13.1. |
| "Under Defendant's "Safe Work Practices," the lines should have been locked out and tagged out before work was permitted to begin, but Defendant required that the work be performed with the lines pressurized. *Id*. ¶ 11. | "Any Arlanxeo or Turner employee shall each have the authority to stop [SIPA work] if deemed necessary to ensure the safety of any individual. Every supervisor has the responsibility to: <ul><li>Provide a safe and healthful work environment with proper equipment.</li><li>Provide proper training to insure that every employee is prepared to work safely.</li><li>Require compliance with established safety rules and procedures as a condition of employment.</li><li>Know the location of his employees at all times.</li></ul> All Turner's employees are responsible for their personal safety and the safety of others. Stop any unsafe acts and correct or report any unsafe conditions." *Id*. at Att. 4. "Turner is solely responsible for supervision of the [SIPA work] and shall not subcontract any of its responsibility for supervision of any portion of the [SIPA work]." *Id*. § 16.3. |
| "Defendant issued the work permit and required that the work be performed with the lines pressurized. Defendant wanted the unit operating during the work | "Turner is solely responsible for supervision of the [SIPA work] and shall not subcontract any of its responsibility for supervision of any portion of the [SIPA work]." *Id*. § 16.3. "Any Arlanxeo or Turner employee shall each have the authority to stop [SIPA work] if deemed necessary to |

| | |
|---|---|
| because it did not want to shut the unit down. Neither Turner nor Plaintiff had control or authority to issue work permits or to lock out tag out the system that was being insulated." *Id*. ¶ 12. | ensure the safety of any individual.<br>Every supervisor has the responsibility to:<br>• Provide a safe and healthful work environment with proper equipment.<br>• Provide proper training to insure that every employee is prepared to work safely.<br>• Require compliance with established safety rules and procedures as a condition of employment.<br>• Know the location of his employees at all times.<br>All Turner's employees are responsible for their personal safety and the safety of others. Stop any unsafe acts and correct or report any unsafe conditions." *Id*. at Att. 4. |

Thus, Arce's petition triggered Arlanxeo's indemnification rights under the SIPA Agreement and the ACE Policy. *See English v. BGP Intern. Inc.*, 174 S.W.3d 366, 372 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("The duty to defend is determined solely by the precise language in the contract and the factual allegations in the pleadings").

### 4. *Turner and ACE wrongfully rejected Arlanxeo's tender of defense and indemnity.*

Seven (7) days after Arce filed suit against Arlanxeo, Arlanxeo tendered its claim for defense and indemnity to both Turner and ACE. Turner and ACE rejected the tender based on the (legally unsupportable) theory that, because Turner was not named in the Arce Action, the indemnity provision was not triggered. Two months later, and with the benefit of discovery in the Arce Action, Arlanxeo amended and resubmitted its tender to Defendants with supporting evidence, case law, and analysis. Turner again rejected Arlanxeo's tender and simply held to its prior position for denial.

As already established, Arce's failure to name Turner as defendant is not determinative of Turner's indemnity obligation. The factual allegations in the pleadings specifically identify negligent acts or faults of Turner, rather than Arlanxeo, which caused or contributed to the incident, thereby implicating Turner's and ACE's duty to defend Arlanxeo under both the SIPA Agreement and the ACE Policy. As such, the "express negligence" test does not apply to curtail Arlanxeo's

indemnification benefits. *See Colony Ins. Co. v. Adsil, Inc.*, No. 4:16-CV-408, 2018 WL 2562555, at *7 (S.D. Tex. June 4, 2018) ("If the indemnity clause 'does not contemplate indemnifying the indemnitee from consequences of his own negligence[,] ... the express negligence doctrine does not apply.'"). Therefore, Turner and ACE's refusal to defend and indemnify Arlanxeo and direct breach of the parties' agreements.

In sum, because (i) the SIPA Agreement delegated control over site inspections and safe working conditions to Turner and entitled Arlanxeo to indemnification for any claims arising out of Turner's failure to perform its obligations; (ii) the Arce Action alleges negligence caused by Turner; and (iii) Arlanxeo is now exposed to liability as a result of Turner's actions, Arlanxeo is entitled to a defense and indemnity in the Arce Action.

### 5. *The SIPA Agreement forecloses Turner's proposed declaratory judgments.*

The bulk of Turner's requested declarations focus on indemnity obligations regarding **Arlanxeo's** negligence or fault. To be clear, Arlanxeo is not seeking a declaration that it is entitled to indemnity for Arlanxeo's **own** negligence. Rather, Arlanxeo only seeks here what the parties expressly agreed to in the SIPA Agreement—indemnification to the extent of **Turner's** negligence or fault. Thus, certain of the declarations sought by Turner do not conflict with the declarations sought by Arlanxeo:

- The indemnity provision contained in Sectio 25.0 of the SIPA Agreement does not expressly require Turner to defend and indemnify Arlanxeo for Arlanxeo's own negligence and therefore does not meet the express negligence test under Texas state law.

- The SIPA Agreement only obligates Turner to ensure its commercial general liability carrier includes Arlanxeo as an additional insured on its commercial general liability policy to the extent of Turner's obligations expressly assumed under the SIPA Agreement.

Turner and Arlanxeo diverge, however, regarding the following declarations requested by Turner:

**ARLANXEO'S MOTION FOR SUMMARY JUDGMENT**                                      **PAGE 22**

- Turner is not obligated to defend and indemnify Arlanxeo from or against the negligence claims asserted against Arlanxeo in the Arce Action pursuant to the terms of the SIPA Agreement.

- Turner is not obligated to ensure Arlanxeo is included as an additional insured on its commercial general liability policy with respect to the claims asserted against Arlanxeo in the Arce Action.

For all of the reasons stated above, Arce's claims against Arlanxeo are in name only—the **conduct** complained of belongs solely to Turner. Accordingly, the Arce Action triggers Turner's indemnity obligations and forecloses Turner's counterclaim as a matter of law.

### B. Defendants' Refusal to Defend and Indemnify Arlanxeo Breached the SIPA Agreement.

In the alternative, Arlanxeo seeks a determination that both Turner and ACE breached their respective contracts. A breach of contract claim under Texas law requires proof of: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *American General Life Ins. Co. v. Kirsch*, 378 Fed. Appx. 379, 383 (5th Cir. 2010). "[In] cases involving contract interpretation, summary judgment is appropriate if the contract in question is unambiguous and can be given a certain or definite legal meaning or interpretation." *D.E.W., Inc. v. Local 93, Laborers' Int'l Union*, 957 F.2d 196, 199 (5th Cir.1992).

The evidence attached to this Motion conclusively establishes each of these elements in Arlanxeo's favor. Turner's Original Answer admits to entering into the SIPA Agreement with Arlanxeo and includes a counterclaim based on the terms of the SIPA Agreement, thereby conceding its validity.[37] ACE's Original Answer likewise admits it issued the ACE Policy to Turner.[38] Neither Defendant alleges that the agreements are ambiguous.

---

[37] ECF Doc. 9 ¶¶ 7-11, 13-14; p. 9.
[38] ECF Doc. 8 ¶ 15.

**ARLANXEO'S MOTION FOR SUMMARY JUDGMENT**                                                  **PAGE 23**

Arlanxeo fully performed its obligations in accordance with the SIPA Agreement.[39] Neither Defendant alleges an affirmative defense in the alternative, nor do they assert any counterclaim premised on an allegation of Arlanxeo's nonperformance.[40] Moreover, the parties acknowledge the Arce Action and the damages claimed against Arlanxeo therein.[41]

As detailed above, Turner was contractually responsible for each of the acts or omissions of which Arce complains. Thus, by each rejecting Arlanxeo's tender for defense and indemnification, both Turner and ACE breached their contractual indemnification obligations under section 25 of the SIPA Agreement and Endorsement 35 of the Policy, respectively. As a result, Arlanxeo has incurred damages in defending against the Arce Action and is positioned to incur additional damages pending a resolution of the pending lawsuit.

**C. Defendants' Affirmative Defenses Have Not—and Cannot—be Proven.**

"When the non-movant bears the burden of proving such material facts at trial (either as a plaintiff or the defendant asserting an affirmative defense), movants may satisfy their burden "merely [by] demonstrat[ing] an absence of evidentiary support in the record for the non-movant's case." *Wesley v. Gen. Drivers, Warehousemen & Helpers Loc., 745*, 660 F.3d 211, 213 (5th Cir. 2011) (quoting *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010)). To the extent the plain language of the SIPA Agreement, the ACE Policy, Arlanxeo's preceding arguments, and the attached evidence do not nullify each of Turner and ACE's affirmative defenses, Arlanxeo moves for summary judgment on each affirmative defense. Because Turner and ACE present neither facts nor evidence supporting their affirmative defenses, no genuine issue of material fact exists.

---

[39] Ex. A ¶ 5.
[40] *See* ECF Docs. 8 and 9.
[41] ECF Doc. 8 ¶¶ 17-19; ECF Doc. 9 ¶ 17.

**ARLANXEO'S MOTION FOR SUMMARY JUDGMENT**

**D. Arlanxeo is Entitled to Attorneys' Fees.**

Because Turner and ACE refused to defend and indemnify Arlanxeo in the Arce Action as required under the SIPA Agreement and the ACE Policy, Arlanxeo was forced to bring this suit and has incurred attorneys' fees in doing so. Pursuant to section 25 of the SIPA Agreement, 28 U.S.C. 2202, and/or Texas Civil Practice and Remedies Code sections 37.009 and 38.001, Arlanxeo seeks an award of reasonable attorneys' fees incurred in this action.

## CONCLUSION

For the foregoing reasons, Arlanxeo respectfully requests that the Court grant this Motion. Specifically, Arlanxeo requests the Court make the following declarations:

(a) Under the SIPA Agreement, Turner agreed to assume liability for supervision of its employees, responsibility for their safety and health, and sole responsibility for inspecting the work site and ensuring the work was done in a safe manner;

(b) The SIPA Agreement obligates Turner to indemnify, defend, and hold harmless Arlanxeo for damages caused in part or in full by the negligence or fault of Turner;

(c) Arlanxeo is an additional insured under the ACE Policy and the coverage is primary with respect to any and all other insurance;

(d) ACE is obligated under the ACE Policy to indemnify, defend, and hold harmless Arlanxeo for damages caused in part by the negligence or fault of Turner, as provided in the SIPA Agreement;

(e) Arlanxeo timely tendered its defense in the Arce Action to Turner in accordance with the SIPA Agreement;

(f) Turner is specifically obligated under the SIPA Agreement to indemnify, defend, and hold harmless Arlanxeo for the defense costs incurred and to be incurred by Arlanxeo in the Arce Action, in addition to any settlement amount or judgment Arce may obtain against Arlanxeo; and

(g) ACE is specifically obligated under the ACE Policy to indemnify, defend, and hold harmless Arlanxeo for the defense costs incurred and to be incurred by Arlanxeo in the Arce Action, in addition to any settlement amount or judgment Arce may obtain against Arlanxeo.

In the alternative, Arlanxeo requests the Court find that Turner and ACE breached the SIPA Agreement and the Policy, respectively, by their failure to defend and indemnify Arlanxeo in the Arce Action. Finally, Arlanxeo requests the Court grant such other and further relief to which Arlanxeo may be justly entitled.

Respectfully submitted,

**K&L GATES LLP**

*/s/ Beth W. Petronio*
Beth W. Petronio
Attorney-in-Charge
State Bar No. 00797664
Federal Id. No. 29628
beth.petronio@klgates.com
1717 Main Street, Suite 2800
Dallas, TX 75201
(214) 939-5815 Telephone
(214) 939-5849 Facsimile

Rebecca L. Jordan
State Bar No. 24126242
Federal Id No.
becca.jordan@klgates.com
1000 Main, Suite 4150
Houston, Texas 77002
(713) 815-7300 Telephone
(713) 815-7301 Facsimile

**ATTORNEYS FOR PLAINTIFF ARLANXEO USA, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record are being served on July 3, 2025, via the Court's CM/ECF system.

*/s/ Beth W. Petronio*
Beth W. Petronio