**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ARLANXEO USA, LLC, | § § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-1980 |
| | § | |
| TURNER INDUSTRIES GROUP, LLC | § | |
| and ACE AMERICAN INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Arlanxeo USA, LLC is seeking a ruling that Turner Industries Group, LLC and ACE American Insurance Company have a contractual duty to defend it in an underlying personal-injury suit. Arlanxeo moved for summary judgment. (Docket Entry No. 16). Turner responded, (Docket Entry No. 32), and ACE cross-moved for summary judgment, (Docket Entry No. 33).

Based on the pleadings, the motion, the responses, the reply, the sur-reply, the record, and the applicable law, the court grants in part Arlanxeo's motion for summary judgment, (Docket Entry No. 16), and denies ACE's cross-motion for summary-judgment, (Docket Entry No. 33). Turner and ACE have a duty to defend Arlanxeo in the underlying personal-injury suit.

**I.    Background**

Arlanxeo produces synthetic, high-performance rubber and elastomers. (Docket Entry No. 17-1 ¶ 2). Turner is a contractor that provides industrial services, including shutdown and turnaround services to companies that produce fuel, energy, and other materials. (*Id.* ¶ 3).

On January 23, 2017, Arlanxeo and Turner executed a Scaffolding, Insulation, Painting and Abatement (SIPA) Services Agreement. (Docket Entry No. 17-2). Turner agreed to provide industrial services at Arlanxeo's plant in Orange, Texas. (*Id.*). The SIPA Agreement charged

Turner with responsibility and liability for "the health and safety of its officers, directors, agents, employees, representatives, supervisors, successors, assigns, employees, or subcontractors while carrying out the work specified in the contract documents, including the required standard personal protective equipment." (Docket Entry No. 17-2 § 13.1 (capitalization omitted)). The Agreement required Turner to "inspect the visual above ground site and be familiar with any obstacles or unusual conditions at the site" and to accept liability for claims "arising from site conditions that could have reasonably been observed and/or known" before entering into the SIPA Agreement. (*Id.* § 10.1; *see also* § 10.2). The Agreement also required Turner to indemnify, defend, and hold harmless Arlanxeo for claims based on the negligent acts or omissions of Turner that arise from or relate to Turner's negligent performance of its obligations under the Agreement:

> CONTRACTOR SHALL INDEMNIFY, DEFEND AND HOLD HARMLESS OWNER, ITS PREDECESSORS, SUCCESSORS, PARENT, AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, REPRESENTATIVES AND ASSIGNS, FROM AND AGAINST ANY AND ALL CLAIMS, DEFINED IN THIS ARTICLE AS CLAIMS, LIABILITY, CAUSES OF ACTION, CONTRIBUTION, INDEMNITY, SUITS, DAMAGES, LOSS, COSTS, FINES AND EXPENSES, INCLUDING BUT NOT LIMITED TO REASONABLE ATTORNEY'S FEES AND LITIGATION COSTS, TO THE EXTENT SUCH CLAIMS ARE CAUSED BY OR ALLEGED TO HAVE BEEN CAUSED BY THE NEGLIGENT ACTS OR OMISSIONS OF CONTRACTOR OR ANY OF ITS OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, REPRESENTATIVES, SUPERVISORS, SUCCESSORS, ASSIGNS, EMPLOYEES, SUBCONTRACTORS, OR ANYONE ACTING ON ANY OF THEIR BEHALF, ARISING FROM, OR RELATED TO CONTRACTOR'S NEGLIGENT PERFORMANCE OF ITS OBLIGATIONS UNDER THIS AGREEMENT INCLUDING CLAIMS CONNECTED WITH OR RESULTING FROM INJURY TO OR DEATH OF PERSONS AND INJURY TO PROPERTY. SUCH ACTS AND OMISSIONS MAY INCLUDE, BUT ARE NOT LIMITED TO, NEGLIGENCE, STRICT LIABILITY, BREACH OF CONTRACT OR WARRANTY, OR STATUTORY VIOLATION. THE CONTRACTOR SHALL ENDEAVOR TO AMICABLY SETTLE ALL CLAIMS ASSERTED BY ANY OTHER PERSON OR ENTITY ARISING FROM SUCH ACTS OR OMISSIONS. SUBJECT TO AND LIMITED BY THE FOREGOING, CONTRACTOR FURTHER AGREES TO DEFEND, AT ITS OWN EXPENSE, AND ON BEHALF OWNER AND IN THE NAME OF OWNER ANY CLAIM OR LITIGATION BROUGHT IN CONNECTION WITH ANY SUCH INJURY,

DEATH, OR DAMAGE. IN ANY SUCH CASE, OWNER MAY SELECT THE COUNSEL OF ITS CHOICE. CONTRACTOR SHALL HAVE NO DUTY TO PAY DEFENSE COSTS INCURRED BY OWNER IF IT IS DETERMINED THAT A CLAIM WAS NOT CAUSED BY THE NEGLIGENT ACTS OR OMISSIONS OF CONTRACTOR OR ANY OF ITS OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, REPRESENTATIVES, SUPERVISORS, SUCCESSORS, ASSIGNS, EMPLOYEES, SUBCONTRACTORS, OR ANYONE ACTING ON ANY OF THEIR BEHALF.

IN THE EVENT ANY DAMAGES ARE CAUSED IN PART BY THE NEGLIGENCE OR FAULT OF CONTRACTOR AND IN PART BY ANY OTHER PARTY OR PARTIES (INCLUDING OWNER), CONTRACTOR AGREES THAT THIS INDEMNITY PROVISION APPLIES AND THAT CONTRACTOR WILL INDEMNIFY OWNER AND ITS PREDECESSORS, SUCCESSORS, PARENT, AFFILIATES, OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, REPRESENTATIVES AND ASSIGNS, TO THE EXTENT OF CONTRACTOR'S OR ANY OF ITS OFFICERS, DIRECTORS, AGENTS, EMPLOYEES, REPRESENTATIVES, SUPERVISORS, SUCCESSORS, ASSIGNS, EMPLOYEES, SUBCONTRACTORS, OR ANYONE ACTING ON ANY OF THEIR BEHALF, NEGLIGENCE OR FAULT.

THIS INDEMNITY PROVISION IS SPECIFICALLY INTENDED TO INCLUDE, BUT IS NOT LIMITED TO, ANY CLAIMS FOR, ON ACCOUNT OF, OR ARISING FROM PERSONAL INJURIES OR DEATH ACTUALLY OR ALLEGEDLY SUSTAINED BY EMPLOYEES OF THE CONTRACTOR OR ITS SUBCONTRACTORS OR OTHER ENTITIES OR PERSONS ACTING ON CONTRACTOR'S BEHALF. . . .

(*Id.* § 25).

The SIPA Agreement required Turner to obtain its own insurance and to name Arlanxeo as an additional insured. (*See id.* § 24.1). Turner obtained insurance from ACE to satisfy this obligation. (Docket Entry No. 17-3). That agreement provides:

Name of Person or Organization: Any Owner, Lessee or Contractor whom you have agreed to include as an additional insured under a written contract or purchase order, and any other person or organization you are required to add as an additional insured under this contract or purchase order, but only to the extent of the Named Insureds obligation to defend or indemnify pursuant to a written contract that was executed prior to the date of loss. The company, however, shall have no obligation to defend or indemnify any such person or organization unless and until the Named Insureds obligation to defend and indemnify is accepted by the Named Insured and agreed to by the company or determined by judgment.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

(Docket Entry No. 17-3 at 96 (Endorsement No. 35)).

In September 2023, Ismael Acre sued Arlanxeo in the 163rd Judicial District Court of Orange County, Texas based on injuries allegedly sustained in November 2022, while working as an insulator for Turner at the plant. (Docket Entry No. 17-4). The action was removed to the Eastern District of Texas, where Acre amended his complaint. The amended complaint contains substantially the same allegations as the state-court petition. (Docket Entry No. 17-5). Acre alleges that he "had been installing pipe-covering insulation blocks on 12-inch boiler feed water piping and was measuring to install aluminum metal jacketing" when "a small diameter (3/8 inch) impulse line on a pressure switch broke, spraying hot water/steam on" him. (*Id.* ¶ 6). Because Acre was harnessed several feet off the ground when the pipe broke, "he was continually sprayed with steam and hot water." (*Id.* ¶ 7). "As a result of the hot water/steam that was sprayed on" Acre, he "suffered severe burns to a majority of the bottom half of his body and required surgery on his shoulder." (*Id.*).

Although Acre was working "in accordance with Turner's contract with" Arlanxeo, he alleges that Turner did not cause his injuries. (*Id.* ¶¶ 6, 8, 9). Acre alleges that the "impulse line was not a part of the insulating work [Alranxeo] contracted Turner to perform," (*id.* ¶ 8); that "no action by [Acre] caused the impulse line to break," (*id.*); that Arlanxeo "knew or should have known that normal operation of the plant would result in thinning and deterioration of the impulse line, making it subject to breakage if bumped or from the pressurized liquid in the pipes," (*id.* ¶ 9); and that, under Arlanxeo's "Safe Work Practices," "the lines should have been locked out and

4

tagged out before work was permitted to begin," (*id.* ¶ 11). Acre alleges negligence and premises liability against Arlanxeo. (*Id.* ¶¶ 13–18, 19–22). Arce stipulates that "[Arlanxeo] had sole contractual responsibility for the safe housekeeping of the actual conditions that caused the injury to [Arce]." (*Id.* ¶ 14).

On October 3, 2023, Arlanxeo sent a notice, tender, and demand for coverage to Turner based on Acre's suit. (Docket Entry No. 17-6). The notice asked Turner to inform ACE of the demand. (*Id.* at 2). Turner rejected Arlanxeo's demand, explaining that Turner was not a defendant in the Acre litigation and that the allegations in that case related only to Arlanxeo's negligence. (Docket Entry No. 17-7 at 3). ACE also rejected Arlanxeo's demand, adding that its obligation to defend did not arise unless and until Turner accepted the obligation to defend or its obligation was determined by a judgment. (Docket Entry No. 17-8 at 2). In January 2025, Arlanxeo served an amended tender that replied to the legal positions the defendants took in their responses and that offered additional arguments based on discovery in Acre's underlying suit. (Docket Entry No. 17-9). Turner replied and continued to deny liability and a duty to defend. (Docket Entry No. 17-10 at 1–3).

This declaratory-judgment action followed. (Docket Entry No. 1). Arlanxeo moved for summary judgment on its contract claim and request for declaratory relief, asserting that the defendants breached both the duty to defend and the duty to indemnify. (Docket Entry No. 16). This court deferred ruling on the duty to indemnify but ordered the defendants to respond to the motion for summary judgment on the duty to defend. (Docket Entry No. 31). Alranxeo's motion for summary judgment on the defendants' alleged duty to defend is ready for ruling.

## II.     The Legal Standard

### A.     Summary Judgment

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting FED. R. CIV. P. 56(a)).  "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact.'" *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022) (alteration in original) (quoting reference omitted).  "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).  "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). Of course, all reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with 'conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

### B.    The Applicable State Law

This is a diversity case, so state law applies. *Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 n.3 (5th Cir. 2001). Because "the forum state . . . provides the law that governs [the] choice-of-law analysis," the court looks to Texas choice-of-law principles. *Cardoni v. Prosperity Bank*, 805 F.3d 573, 580 (5th Cir. 2015). Under those principles, Texas law governs insurance policies "payable to any citizen or inhabitant of [Texas] by any insurance company or corporation doing business within [Texas]." TEX. INS. CODE § 21.42. ACE argues that Louisiana law applies to the AAIC Policy because ACE issued that policy "to Turner in Louisiana through a Louisiana producer." (Docket Entry No. 33 at 6). "The legal standards governing the duty to defend under Louisiana law are substantially the same as those applicable under Texas law." *Underwriters at Lloyd's, Syndicate 1036 v. Coastal Prod. Sys.*, LLC, No. CIV. 12-1155 RCL, 2015 WL 1333347, at *3 (W.D. Tex. Mar. 23, 2015). The court looks to Texas law to resolve the parties' dispute.

## C.    The Duty to Defend

"Under Texas law, an insurer may have a duty to defend a lawsuit against its insured." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 552 (5th Cir. 2004).  To determine whether the duty exists, Texas courts follow the "eight corners" rule, under which the court compares the allegations in the four corners of the plaintiff's pleading with the provisions in the four corners of the insurance policy.  *See Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).  "If analyzing the eight corners shows the possibility of coverage, the insurer has the duty to defend." *Sentinel Ins. Co. v. Choice! Energy Servs. Retail LP*, 640 F. Supp. 3d 734, 739 (S.D. Tex. 2022).

"It is well established that insurance policies are strictly construed in favor of the insured in order to avoid exclusion of coverage." *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984).  The Texas eight-corners rule is "very favorable to insureds." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008).  "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 141 (cleaned up).  "The allegations in the petition must be construed liberally in favor of the insured, and all doubts must be resolved in favor of the duty to defend." *Lyda Swinerton Builders, Inc. v. Okla. Surety Co.*, 903 F.3d 435, 446 (5th Cir. 2018).  "While courts may not read facts into the petition or speculate as to factual scenarios which might trigger coverage under the policy, they 'may draw inferences from the petition that may lead to a finding of coverage.'" *Id.* at 447 (quoting *Gore Design*, 538 F.3d at 369).

The duty to defend is present "[i]f *any* allegation in the complaint is even *potentially* covered by the policy." *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1492 (5th Cir. 1992) (emphasis added). "If the petition pleads facts sufficient to create the *potential* of covered liability, then the insurer has a duty to defend the *entire* case, even if some of the alleged injuries are *not* covered." *Lyda Swinerton Builders*, 903 F.3d at 447.

## III.    Analysis

The disputed issues are whether the Acre suit triggered Turner's duty to defend Arlanxeo and ACE's derivative duty to defend Turner and Arlanxeo. The court concludes that both Turner and ACE have a duty to defend Arlanxeo.

### A.    Turner's Duty to Defend

Several allegations in Acre's complaint are "potentially covered by the" SIPA Agreement between Arlanxeo and Turner, *Enserch Corp.*, 952 F.2d at 1492, and "create the potential of covered liability," *Lyda Swinerton Builders*, 903 F.3d at 447 (emphasis omitted). Acre alleges that his injury arises out of a negligently maintained and operated impulse line. He alleges that his injury was caused by the "thinning and deterioration of the impulse line," which made it "subject to breakage if bumped or from the pressurized liquid in the pipes." (Docket Entry No. 17-5 ¶ 9). He also alleges that "the lines should have been locked out and tagged out before work was permitted to begin." (*Id.* ¶ 11).

Both allegations relate to obligations that potentially trigger Turner's liability under the SIPA Agreement. That Agreement required Turner to "indemnify, defend and hold harmless" Arlanxeo for the "negligent acts or omissions of" Turner in its "negligent performance of its obligations under" the SIPA Agreement. (Docket Entry No. 17-2 § 25). Those obligations included complying with Arlanxeo's "health and safety policies, site rules, safety training and

requirements," (*id.* § 13.1); assuming "responsib[ility] and liab[ility] for the health and safety of its . . . employees . . . while carrying out" the work in the SIPA Agreement, (*id.*); inspecting "the visual above ground site and be[ing] familiar with any obstacles or unusual conditions at the site," (*id.* § 10.1); and accepting liability for claims "arising from site conditions that could have reasonably been observed and/or known" before entering into the SIPA Agreement, (*id.*; *see also* § 10.2). Because Acre alleges that his injuries resulted from the line's age, thinning, and deterioration that should have been known and corrected, the suit potentially triggers Turner's responsibility for dangerous site conditions that it reasonably could have known or found. And because Acre alleges that his injuries were caused by a departure from Arlanxeo's safety policies, the suit potentially triggers Turner's obligation to comply with Arlanxeo's health and safety policies and site rules. The complaint allegations implicate some of Turner's obligations under the SIPA Agreement and the duties for which it agreed to indemnify and defend Arlanxeo. Arlanxeo can invoke Turner's "duty to defend the *entire* case." *Lyda Swinerton Builders*, 903 F.3d at 447.

Turner offers several responses, none persuasive. First, Turner argues that because Arlanxeo is asking to be indemnified and defended for its own negligence, the SIPA Agreement had to comply with Texas's Fair Notice Doctrine, which it does not. (Docket Entry No. 32 at 11–15). This argument proceeds from the faulty premise that Arlanxeo is asking Turner to defend Arlanxeo from allegations of Arlanxeo's negligent conduct. Instead, Arlanxeo is asking Turner to defend Arlanxeo for alleged acts and omissions that Turner agreed to perform or assume responsibility for in the SIPA Agreement.

Second, Turner argues that Acre's lawsuit does not implicate Turner's duties under the SIPA Agreement because the complaint does not allege "any act or omission, negligent or

10

otherwise, on the part of Turner" or even "mention . . . or reference [] Turner at all." (*Id.* at 18; *see id.* at 16–21). Turner is correct that Acre's complaint implicates only Arlanxeo and its allegedly negligent conduct.[1] But that fact is immaterial in this case. "When reviewing the pleadings" for a duty to defend, "courts must focus on the factual allegations, not the asserted legal theories or conclusions." *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015) (citing *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014)). The Texas Supreme Court has directed courts to apply the eight-corners rule to "the factual allegations that show the origin of the damages," not "the legal theories alleged." *Nat'l Union Fire Ins.*, 939 S.W.2d at 141–42 (quoting citation omitted). Although Acre's theory of the case is that Arlanxeo had the legal duty to maintain the pipe or to turn it off, the SIPA Agreement assigns those legal duties to Turner. *See, e.g.*, *LM Ins. Corp. v. Nautilus Ins. Co.*, 723 F. Supp. 3d 519, 525 (S.D. Tex. 2024) (rejecting the argument that the putative defender was "not named as a defendant in the [state court suit] and is not mentioned in" the pleadings).

Third, Turner argues that Arlanxeo improperly relies on extrinsic evidence to trigger the duty to defend. (Docket Entry No. 32 at 21–22). Turner argues that Arlanxeo cannot refer to "other provisions of the SIPA Agreement" because that would be "a request that the court consider extrinsic evidence to determine whether the petition triggers the duty to defend." (*Id.* at 21). Arlanxeo responds that other provisions of the SIPA Agreement are not extrinsic evidence; Texas law considers extrinsic other documents, not other provisions within the four-corners of the indemnity agreement. (*See* Docket Entry No. 34 at 6 (citing *In re Deepwater Horizon*, 470 S.W.3d

---

[1] Acre's artful pleading is potentially a consequence "of the statutory worker[']s compensation bar," which prevents Acre "from making additional claims against his employer, Turner, after obtaining workers compensation benefits." *AIG Specialty Ins. Co. v. Ace Am. Ins. Co.*, No. 2:18-CV-16, 2019 WL 1243911, at *8 (S.D. Tex. Mar. 18, 2019).

11

452 (Tex. 2015))).  The parties' disagreement over the scope of the eight-corners rule is immaterial because Arlanxeo prevails under either interpretation.  The parties agree that courts "determine the scope of coverage from the language employed in the insurance policy" and that "if the policy directs [courts] elsewhere, [they] will refer to an incorporated document to the extent required by the policy."  *In re Deepwater Horizon*, 470 S.W.3d at 460.  The SIPA Agreement directs the court to look to Turner's "obligations under this agreement."  (Docket Entry No. 17-2 § 25).  The SIPA Agreement's duty to defend incorporates by reference the duties that the Agreement imposes on Turner.  Arlanxeo does not rely on extrinsic evidence to determine Turner's duty to defend.  Its argument is consistent with the Texas Supreme Court's directions on applying the eight-corners rule.

Turner has a duty to defend Arlanxeo in the underlying Acre suit.

**B.      ACE's Duty to Defend**

ACE argues that it does not have a duty to defend because the factual allegations fail to satisfy the additional-insured provision in the ACE policy.  (Docket Entry No. 33 at 8–18).  Arlanxeo is an additional insured "only to the extent of" Turner's "obligation to defend or indemnify pursuant to a written contract that was executed prior to the date of loss."  (Docket Entry No. 17-3 at 96 (Endorsement No. 35)).  ACE repeats Turner's argument that "Arce does not allege his injuries were caused in whole or in part by Turner."  (Docket Entry No. 33 at 11).  Without these allegations, according to ACE, "Arlanxeo is not an additional insured with respect to a duty to defend."  (*Id.*).  ACE further argues, as Turner did, that Arlanxeo "relies on extrinsic evidence to establish" the duty to defend.  (*Id.* at 12).

ACE's arguments fail for the same reasons that Turner's did.  The court must look to Turner's "obligations under th[e] agreement."  (Docket Entry No. 17-2 § 25).  The SIPA

Agreement requires Turner to comply with Arlanxeo's health and safety policies, (*id.* § 13.1), and to accept liability for claims "arising from site conditions that could have reasonably been observed and/or known" before entering into the Agreement, (*id.* § 10.1; *see also* § 10.2). The complaint invokes these obligations by alleging that Acre's injury was caused by the "thinning and deterioration of the impulse line," (Docket Entry No. 17-5 ¶ 9), and that "the lines should have been locked out and tagged out before work was permitted to begin," (*id.* ¶ 11). Acre's complaint triggers Turner's "obligation to defend . . . pursuant to a written contract that was executed prior to the date of loss," (Docket Entry No. 17-3 at 96 (Endorsement No. 35)), in turn invoking ACE's duty to defend.

This conclusion does not change because Acre's complaint does not mention ACE. Louisiana courts applying the eight-corners rule "look to *factual*, not conclusory, allegations of the petition to determine whether the insurer must defend the insured." *Guste v. Lirette*, 251 So. 3d 1126, 1133–34 (La. App. 1 Cir. 2018); *Chalmers, Collins & Alwell, Inc. v. Burnett & Co.*, 175 So. 3d 1100, 1102 (La. App. 3 Cir. 2015) ("Courts look to the factual allegations of the petition, rather than conclusory allegations, in determining whether the insurer must defend the insured."). "[E]ven when the petition discloses many acts or omissions for which there would be no coverage, 'the duty to defend may nonetheless exist if there is at least a single allegation' that would not unambiguously be excluded." *Burnett & Co.*, 175 So. 3d at 1102 (quoting *Duhon v. Nitrogen Pumping & Coiled Tubing Specialists, Inc.*, 611 So.2d 158, 161 (La. App. 3 Cir. 1992)). The factual allegations in Acre's complaint about the failure to maintain or turn off the impulse line are allegations of omissions that the SIPA Agreement assigned to Turner and that the indemnity provision incorporates. Louisiana law imposes on Turner a duty to defend Arlanxeo in the Acre suit. ACE must defend Arlanxeo as an additional insured.

13

The remaining requirements of the additional-insured provision do not undermine Arlanxeo's motion for summary judgment. First, ACE's duty to defend or indemnify is not triggered "unless and until [Turner's] obligation to defend and indemnify is accepted by [Turner] and agreed to by the company or determined by judgment." (Docket Entry No. 17-3 at 96 (Endorsement No. 35)). The court's judgment in Arlanxeo's favor meets this requirement. *See AIG Specialty*, 2019 WL 1243911, at \*6 ("a declaratory judgment on the duty to defend at the outset of the underlying case" satisfies the "unless and until" requirement). Second, Arlanxeo is an additional insured "with respect to liability arising out of [Turner's] operations or premises owned by or rented to [it]." (Docket Entry No. 17-3 at 96 (Endorsement No. 35)). Arce was at Arlanxeo's facility for the purpose of Turner's operations. (Docket Entry No. 17-5 ¶¶ 5–6). And as discussed, Acre alleges that he was injured because of omissions that the SIPA Agreement assigned to Turner. Those allegations trigger the additional-insured obligations. *See, e.g.*, *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.*, 256 S.W.3d 660, 664–67 (Tex. 2008) (applying a nearly identical additional-insured provision).

ACE has a duty to defend Arlanxeo as an additional insured.

## IV.  Conclusion

Arlanxeo's motion for summary judgment, (Docket Entry No. 16), is granted in part. ACE's cross-motion for summary judgment, (Docket Entry No. 33), is denied. Declaratory judgment is entered, as follows:

1. Turner is obligated under the SIPA Agreement to defend Arlanxeo in Arce's suit and to hold Arlanxeo harmless for the defense costs Arlanxeo has incurred and will incur in that suit.

2. ACE is obligated under the ACE Policy to defend Arlanxeo in the Arce suit and to hold Arlanxeo harmless for the defense costs it has incurred and will incur in that suit.

The court will hold a status conference on February 24, 2026, at 2:00 p.m. CT by Zoom. The Zoom link will be posted on the court's website.

SIGNED on February 18, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge